**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**

| | |
|---|---|
| DAVID K. HICKS, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CHARTER COMMUNICATIONS, INC. d/b/a SPECTRUM and JOHN DOES 1-10,<br><br>Defendant. | Case No. |

**CLASS ACTION COMPLAINT**

**NOW COMES** DAVID K. HICKS ("Plaintiff), individually, and behalf of all others similarly situated, by and through his undersigned counsel, complaining of CHARTER COMMUNICATIONS, INC. d/b/a SPECTRUM ("Defendant"), as follows:

**NATURE OF THE ACTION**

1. Plaintiff brings this action seeking redress for Defendant's violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq*.

2. "The primary purpose of the TCPA was to protect individuals from the harassment, invasion of privacy, inconvenience, nuisance, and other harms associated with unsolicited, automated calls." *Parchman v. SLM Corp*., 896 F.3d 728, 738-39 (6th Cir. 2018) *citing* Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2, 105 Stat. 2394 (1991).

3. As the Supreme Court recently observed, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

## JURISDICTION AND VENUE

4. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

5. Venue in this district is proper under 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

## PARTIES

6. Plaintiff is a natural person, over 18-years-of-age, who at all times relevant resided in Moraine, Ohio.

7. Defendant is a corporation organized under the laws of the State of Delaware.

8. Defendant is a prominent cable and internet service provider.

9. Defendant provides cable and internet services to more than 31 million customers in 41 states, including the State of Ohio.

10. Defendant maintains its principal place of business in Stamford, Connecticut.

11. Defendant is a "person" as defined by 47 U.S.C. § 153(39).

12. JOHN DOES 1-10 are third party vendors/agents that Defendant engages to place outbound marketing calls to consumers on Defendant's behalf.

13. Defendant is vicariously liable for the acts of JOHN DOES 1-10.

## FACUTAL ALLEGATIONS

14. Upon information and belief, Defendant develops marketing campaigns using a combination of sales channels, with an emphasis on outbound telemarketing.

15. Upon information and belief, Defendant utilizes third-party vendors (John Does 1-10) to market its cable and internet products.

16. Upon information and belief, Defendant's vendors are essential to the success of its telemarketing campaigns.

17. Upon information and belief, Defendant's ability to generate revenue significantly depends on its access to high-quality vendors.

18. Defendant is subject to liability under the TCPA for actions of its third-party vendors who engage in outbound telemarketing efforts on Defendant's behalf.

19. At all times relevant, Plaintiff was the sole operator, possessor, and subscriber of the numbers ending in 5676 and 2174 ("Plaintiff's phone numbers").

20. At all times relevant, Plaintiff's phone numbers were assigned to a cellular telephone service.

21. At all times relevant, Plaintiff was financially responsible for his cellular telephone equipment and services.

22. At no point in time did Plaintiff enter into a services contract with Defendant.

23. At no point in time did Plaintiff solicit Defendant's services.

24. At no point in time did Plaintiff provide Plaintiff's phone numbers to Defendant or otherwise consent to receive marketing calls from Defendant.

25. In or around March 2021, Plaintiff started to receive solicitation calls from Defendant to his cellular number ending in 5676.

26. Shortly after Defendant's solicitation calls began, Plaintiff answered a few of Defendant's calls.

27. Immediately upon answering Defendant's solicitation calls, Plaintiff was greeted by a prerecorded or artificial voice that marketed Defendant's services.

28. At first, Plaintiff would just hang up and hope that the calls would cease on their own.

29. Unfortunately, Defendant's solicitation calls did not end and Defendant continued

placing solicitation calls to Plaintiff's number ending in 5676.

30. Frustrated with the invasive solicitation calls, Plaintiff answered one of Defendant's calls and was eventually connected with a live representative.

31. Once connected with a live representative, Plaintiff advised the representative that he was not interested in Defendant's services and requested that Defendant cease its solicitation calls to his number ending in 5676.

32. Despite Plaintiff expressing no interest in Defendant's services, Defendant continued placing solicitation calls to Plaintiff's number ending in 5676 through December 2021.

33. In December 2021, Plaintiff changed his cellular phone number and obtained a new number ending in 2174.

34. Shortly after Plaintiff changed numbers, Plaintiff began receiving solicitation calls from Defendant to his new number ending in 2174.

35. In or around December 2021, frustrated with Defendant's relentless solicitation calls, Plaintiff answered one of Defendant's calls and again spoke to a live representative.

36. During this call, Plaintiff requested that Defendant cease its calls to his new number ending in 2174.

37. Defendant's request fell on deaf ears and Defendant continued to bombard Plaintiff's new number with solicitation calls.

38. Defendant placed its solicitation calls from various phone numbers, including the phone number (937) 262-9586.

39. All of Defendant's solicitation calls utilized an artificial or prerecorded voice ("robocalls").

40. It was clear to Plaintiff that Defendant's phone calls utilized an artificial and/or

prerecorded voice because (1) all calls contained the identical sales pitch; (2) the voice in all calls was monotone and was conspicuously not the voice of a live representative; and (3) none of the calls identified Plaintiff by name.

41. In total, Defendant placed no less than twenty-five (25) solicitation calls to Plaintiff's phone numbers from March 2021 through the present.

**DAMAGES**

42. Defendant's illegal telemarketing practices have caused Plaintiff concrete harm, including: invading Plaintiff's privacy, nuisance, wasting Plaintiff's time, the increased risk of personal injury resulting from the distraction caused by the solicitation calls, decreased productivity, aggravation that accompanies unwanted solicitation calls, frustration, loss of concentration, and the loss of battery charge.

43. Moreover, each time Defendant placed a robocall to Plaintiff's phone numbers, Defendant occupied Plaintiff's cellular phone such that Plaintiff was unable to receive other phone calls or otherwise utilize his cellular phone while his phone was ringing.

44. Frustrated and concerned with the escalation of Defendant's invasive telemarketing practices, Plaintiff retained counsel to file this action to compel Defendant to cease its unlawful practices.

**CLASS ALLEGATIONS**

45. All preceding Paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

46. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3) individually, and on behalf of all others similarly situated ("Putative Class") defined as follows:

> All individuals in the United States (1) who do not have an account with Defendant; (2) to whom Defendant, or a third party acting on Defendant's behalf, placed, or caused to be placed, a phone call; (3) directed to a number assigned to a cellular telephone service; (4) using an artificial or prerecorded voice; (5) without the individual's prior express written consent; (6) within the four years preceding the date of this complaint through the date of class certification.

47. The following individuals are excluded from the Putative Class: (1) any Judge or Magistrate Judge presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former employees, officers, and directors; (3) Plaintiff's attorneys; (4) individuals who properly execute and file a timely request for exclusion from the Putative Class; (5) the legal representatives, successors, or assigns of any such excluded individuals; and (6) individuals whose claims against Defendant have been fully and finally adjudicated and/or released.

**A. Numerosity**

48. Upon information and belief, the members of the Putative Class are so numerous that joinder of them is impracticable.

49. The exact number of the members of the Putative Class is unknown to Plaintiff at this time and can only be determined through targeted discovery.

50. The members of the Putative Class are ascertainable because the Class is defined by reference to objective criteria.

51. The members of the Putative Class are identifiable in that their names, addresses, and telephone numbers can be identified in business records maintained by Defendant or its third-party vendors.

**B. Commonality and Predominance**

52. There are many questions of law and fact common to the claims of Plaintiff and the claims of the members of the Putative Class.

53. Those questions predominate over any questions that may affect individual members of the Putative Class.

**C. Typicality**

54. Plaintiff's claims are typical of members of the Putative Class because Plaintiff and members of the Putative Class are entitled to damages as a result of Defendant's unlawful marketing practices.

**D. Superiority and Manageability**

55. This case is also appropriate for class certification as class proceedings are superior to all other available methods for the efficient and fair adjudication of this controversy.

56. The damages suffered by the individual members of the Putative Class will likely be relatively small, especially given the burden and expense required for individual prosecution.

57. By contrast, a class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

58. Economies of effort, expense, and time will be fostered, and uniformity of decisions ensured.

**E. Adequate Representation**

59. Plaintiff will adequately and fairly represent and protect the interests of the Putative Class.

60. Plaintiff has no interests antagonistic to those of the members of the Putative Class

and Defendant has no defenses unique to Plaintiff.

61. Plaintiff has retained competent and experienced counsel in consumer class action litigation.

## CLAIMS FOR RELIEF

### COUNT I:
### Telephone Consumer Protection Act (47 U.S.C. § 227 et. seq.)
### (On behalf of Plaintiff and the Members of Putative Class)

62. All preceding Paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

63. Section 227(b)(1)(A)(iii) of the TCPA prohibits "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an *artificial or prerecorded voice*" to "any telephone number assigned to a paging service, *cellular telephone service*, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2344 (2020) (emphasis added).

64. The TCPA prohibits solicitation calls to wireless numbers unless the caller has the prior express consent of the called party. 47 U.S.C. § 227(b)(1)(A)(iii).

65. Under the TCPA consent rules, some types of calls require prior express written consent, while other types of calls do not require that the consent be in writing.

66. "Prior express written consent" is required for (a) all telemarketing/promotional calls/texts made using an automatic telephone dialing system ("ATDS") placed to wireless numbers, and (b) all artificial or prerecorded telemarketing/promotional voice calls to wireless and residential numbers.[1]

[1] 47 C.F.R. §§ 64.1200(a)(2) and (3).

67. The TCPA consent rules define "prior express written consent" as "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an ATDS or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered."[2]

68. Defendant violated § 227(b)(1)(A)(iii) of the TCPA by placing or causing to be placed no less than twenty-five (25) solicitation calls to Plaintiff's phone numbers utilizing an artificial or prerecorded voice without Plaintiff's prior express written consent.

69. As pled above, Defendant used an artificial or prerecorded voice that automatically played upon Plaintiff answering Defendant's calls.

70. As pled above, Plaintiff never provided Defendant with his phone numbers or otherwise consented to receiving phone calls from Defendant.

71. Upon information and belief, it is Defendant's business practice to place robocalls to consumers without their prior express written consent, a practice designed to maximize profits at the expense of consumers.

72. Upon information and belief, Defendant does not maintain adequate procedures or protocols to ensure that Defendant has the requisite consent to place robocalls to consumers.

73. As a result of Defendant's willful violations of the TCPA, Plaintiff and the members of the Putative Class are entitled to receive up to $1,500.00 in treble damages for each such violation.

---

[2] 47 C.F.R. § 64.1200(c)(2)(ii).

**WHEREFORE**, Plaintiff, on behalf of himself and the members of the Putative Class, requests the following relief:

A. an order granting certification of the proposed class, including the designation of Plaintiff as the named representative, and the appointment of the undersigned as Class Counsel;

B. an order enjoining Defendant from placing or causing to place further violating calls to consumers;

C. judgment in Plaintiff's favor for Defendant's violations of the TCPA;

D. judgment in favor of the putative class for Defendant's violations of the TCPA;

E. an award of $500.00 in damages to Plaintiff and the members of the Putative Class for each violating call;/

F. an award of treble damages up to $1,500.00 to Plaintiff and the members of the Putative Class for each violating call; and

G. any further relief this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury.

Dated: 7/21/2022

Respectfully submitted,

By: s/Jonathan Hilton

Jonathan Hilton (0095742)
HILTON PARKER LLC
7544 Slate Ridge Blvd
Reynoldsburg, OH 43068
Tel: (614) 992-2277
Fax: (614) 927-5980
jhilton@hiltonparker.com