# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| DAVID K. HICKS, individually, and on behalf of all others similarly situated, | Case No. 3:22-CV-00195-MJN-PBS |
| Plaintiff, | |
| v. | |
| CHARTER COMMUNICATIONS, INC., d/b/a SPECTRUM, and JOHN DOES 1–10, | |
| Defendants. | |

**DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................................1

II. PROCEDURAL HISTORY AND RELEVANT FACTUAL BACKGROUND .................3

    A. Procedural History and Plaintiffs' Allegations. .........................................................3

    B. Charter's Business Operations and Limited Ohio Footprint. ....................................4

    C. Charter's Investigation into Plaintiffs' Allegations. .................................................4

III. ARGUMENT AND CITATION TO AUTHORITY ............................................................5

    A. Legal Standard. ..........................................................................................................5

    B. Charter is Not Subject to General Jurisdiction Because it is Not "at Home" in Ohio. .........................................................................................................................6

    C. This Court Lacks Specific Jurisdiction over Charter Because Charter Has No Contacts with Ohio Specific to Plaintiff's TCPA Claims. .........................................7

    1. Plaintiff Fails to Allege a Prima Facie Case of Specific Jurisdiction. .......................7

    2. Charter's Evidence Confirms that Plaintiff Cannot Establish Specific Personal Jurisdiction Either Directly or Vicariously. ...............................................................9

        a. Direct Liability. ..................................................................................................9

        b. Apparent Authority. .........................................................................................10

        c. Actual Authority. .............................................................................................11

        d. Ratification. .....................................................................................................12

IV. CONCLUSION .................................................................................................................13

## I.     INTRODUCTION

Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, Defendant Charter Communications, Inc. moves to dismiss the Complaint in its entirety for lack of personal jurisdiction. Plaintiff David K. Hicks vaguely alleges that Charter, or "JOHN DOES 1-10" allegedly working on Charter's behalf, made at least 25 pre-recorded marketing calls to his two phone numbers in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. ("TCPA").

Plaintiff's vague and conclusory allegations fail to state a *prima facie* claim of either general or specific personal jurisdiction over Charter. In fact, Plaintiff fails to even allege whether it was Charter, or one of the unidentified "JOHN DOES 1-10," who allegedly communicated with him. In any event, Charter's attached jurisdictional evidence confirms that it is not subject to personal jurisdiction in this forum, regardless of the allegations.

With respect to general jurisdiction, Charter: (1) is not incorporated in Ohio; (2) does not maintain a principal place of business in Ohio; and (3) is not "at home" in Ohio. Though Charter is registered to do business in Ohio, it has no corporate offices, real estate, or employees in this state. Moreover, even if Charter's subsidiaries and affiliates' (the "Charter Entities") Ohio operations could be considered for personal jurisdiction (they cannot),[1] such operations are a tiny fraction of the Charter Entities' nationwide operations and are therefore insufficient to render them, let alone Charter, "at home" in Ohio. The Court thus lacks general jurisdiction over Charter.

As to specific jurisdiction, Plaintiff fails to allege that his TCPA claim arises out of any conduct that Charter directed at Ohio. The sum total of his allegations are that an unspecified

---

[1] A subsidiary or affiliate's forum contacts are irrelevant for personal jurisdictional purposes unless "the parent company exerts so much control over the subsidiary that the two do not exist as separate entities." *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 848 (6th Cir. 2017).

"Defendant" called Plaintiff, presumably marketing Charter services.[2]  In making these conclusory and vague allegations, Plaintiff concedes he cannot establish that his claim arises from *Charter's* forum-related activities.  Charter cannot be hailed into a foreign jurisdiction simply because an unidentified party mentioned its trade name on a call.  If more was not required, Charter would be subject to personal jurisdiction in *every* forum *any* time *any* individual purported to be offering Charter services on *any* call, even if that individual had no association with Charter.  That is not the law.  And Plaintiff otherwise fails to adequately allege specific jurisdiction over Charter based on any purported agency relationship between Charter and the unidentified calling party, the "JOHN DOES 1-10."  These pleading deficiencies are dispositive, and the Court should dismiss Plaintiff's claims on this basis alone.

Nevertheless, the jurisdictional evidence filed with this motion confirms these pleading deficiencies are not curable, and that this Court lacks specific jurisdiction over Charter here. That evidence establishes that neither Charter, nor the Charter Entities, nor the outbound telemarketing vendors with which the Charter Entities contract made the alleged calls or even used the number that allegedly called Plaintiff.  Thus, Plaintiff's purported injury did not arise from any Ohio-directed activities by Charter.

Nor could the acts of the caller, whoever it was, be imputed to Charter for purposes of specific jurisdiction under an agency theory.  Charter did not give anyone actual authority to place the alleged calls.  To the contrary, the only parties with authority to make outbound telemarketing calls for Charter did not make the calls identified by Plaintiff.  Nor would they, as those vendors only make calls in full compliance with applicable law, including the TCPA. Additionally, Charter never contacted Plaintiff, precluding any personal jurisdiction via apparent authority—since that theory requires a communication by the alleged principal [Charter] to the Plaintiff, cloaking the alleged agent with authority.  Finally, Plaintiff admits that he never

---

[2] Throughout the Complaint, Plaintiff never distinguishes between Charter and the "JOHN DOES 1-10" and instead refers to "Defendant" collectively, forcing Charter to speculate as to whether Plaintiff is referring to Charter or one of the "John Doe" entities.

purchased Charter services, so there is no benefit that Charter could derive from the purported calls to Plaintiff, prohibiting personal jurisdiction based on ratification. Thus, there is simply no set of facts (alleged or otherwise) that Plaintiff can use to assert personal jurisdiction over Charter.

Put simply, Plaintiff's TCPA claim does not arise from any conduct Charter expressly aimed at Ohio, as required to prove specific jurisdiction. Instead, Plaintiff's claims arise from the purported activities of an *unrelated* and *unidentified* thirty party, and that party's conduct cannot be imputed to Charter. As Charter is not otherwise "at home" in Ohio, there is no general jurisdiction over it in this matter either. For these reasons, Charter respectfully requests that this Court dismiss Plaintiff's Complaint pursuant to Rule 12(b)(2).

## II. PROCEDURAL HISTORY AND RELEVANT FACTUAL BACKGROUND

### A. Procedural History and Plaintiffs' Allegations.

Plaintiff David Hicks filed this putative class action against Charter, asserting one count under the TCPA. Complaint ¶¶ 62-73, ECF No. 1 ("Compl."). In the Complaint, Plaintiff claims that Charter "engages" third-party vendors, identified only as "JOHN DOES 1-10," "to market its cable and internet products." *Id.* ¶¶ 12, 15. Plaintiff alleges starting "in or around March 2021," until present, he received a number of solicitation calls "from Defendant." *Id.* ¶¶ 25-41. Plaintiff alleges that these calls used pre-recorded voices ("PRV") marketing "Defendant's [presumably, Charter] services." *Id.* ¶¶ 26-27. Plaintiff further alleges that on an unidentified date, he answered one of the calls and asked that "Defendant cease its solicitation calls to his number ending in 5676," but that the calls continued—even after Plaintiff changed his phone number. *Id.* ¶¶ 31-34. Plaintiff maintains that at no time did he "enter into a service contract with Defendant" and "express[ed] no interest in Defendant's services." *Id.* ¶¶ 22, 32.

Nowhere in the Complaint does Plaintiff identify whether the calls in question were made by Charter or one of ten "John Doe[]" defendants. *See generally id.* Instead, Plaintiff, knowing he must allege a factual basis for personal jurisdiction, uses the term "Defendant"

3

interchangeably. *Id*. ¶¶ 25-41. These bare-bones allegations fail to satisfy the basic tenets of notice pleading, let alone establish jurisdiction over Charter.

  **B.**  **Charter's Business Operations and Limited Ohio Footprint.**

Charter is a publicly traded company that, through various subsidiaries and related entities, provides cable, internet, and telephone services in forty-one states. Declaration of Christine Flores ("Flores Decl.") ¶ 2. Charter is a Delaware corporation with its principal place of business in Stamford, Connecticut. *Id*. ¶ 5. Although Charter is registered to do business in Ohio, it has no corporate offices, real property, or employees in Ohio. *Id*. ¶¶ 7, 9, 11.

Rather, the Charter Entities conduct **limited** business in Ohio. *Id*. ¶ 7. Less than ten percent (10%) of the Charter Entities' workforce works in Ohio. *Id*. ¶ 8. The Charter Entities own or lease certain hubs, towers, data centers, storage spaces, retail space, and office space in Ohio, but less than ten percent (10%) of that property is located in Ohio. *Id*. ¶ 10. Furthermore, less than 10% of the Charter Entities' total subscribers nationwide reside in Ohio. *Id.* ¶ 12.

  **C.**  **Charter's Investigation into Plaintiffs' Allegations.**

After learning about the alleged calls through the Complaint, Charter confirmed that neither it, nor any of the Charter Entities, nor anyone acting on Charter or the Charter Entities' behalf, made the alleged calls on which Plaintiff bases his Complaint. Declaration of Tracy Whitney ("Whitney Decl.") ¶¶ 6-9. In fact, neither Charter, the Charter Entities, nor their outbound telemarketing vendors have ever used the calling number identified in the Complaint, 937-262-9586. *Id.* ¶ 7. *Id.* ¶¶ 6-9. This is unsurprising, as Charter and the select vendors that perform outbound telemarketing for the Charter Entities only place marketing calls in compliance with the TCPA. *Id*. ¶¶ 5-6.

In the past, third-party fraudsters unaffiliated with Charter sometimes place calls, claiming to be Charter, attempting to steal money or personal information. *Scam and Fraud Alerts*, Spectrum.net (June 25, 2022), https://www.spectrum.net/support/general/scam-and-fraud-alerts ("Charter Press Release"). Charter takes this fraudulent conduct seriously and has

4

even initiated litigation against some of the entities it suspects are engaged in such conduct. *See, e.g.*, *Charter Commc'n Holding Co. v. Easy Pay Sols.*, 2:22-cv-05901 (D. N.J. Oct. 5, 2022). It is possible the calls to Plaintiff were part of such a scam, though Charter does not know what person or entity placed the purported calls at issue, nor whether there were even any calls made to those numbers. *Whitney Decl.* ¶ 9. Charter just knows that neither it nor anyone on its behalf made the calls and, as such, moves to dismiss the Complaint for lack of personal jurisdiction.

### III. ARGUMENT AND CITATION TO AUTHORITY

#### A. Legal Standard.

To establish personal jurisdiction, the plaintiff must show the defendant has sufficient minimum contacts with the forum "so as not to offend traditional notions of fair play and substantial justice." *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) (internal quotations omitted). Under a due process analysis, personal jurisdiction may be either "general" or "specific."[3] *Daimler AG v. Bauman*, 134 S. Ct. 746, 751 (2014); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Plaintiff bears the burden of establishing a *prima facie* case that the court may exercise personal jurisdiction over a defendant. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 889 (6th Cir. 2002). Further, "in the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must,

---

[3] Ohio's long-arm statute is not coextensive with federal due process as the former "requires a proximate cause relationship between a plaintiff's injury claim and the defendant's conduct in Ohio." *Brunner v. Hampson*, 441 F.3d 457, 466 (6th Cir. 2006). As such, the Sixth Circuit advises courts to defer on that analysis until the plaintiff establishes jurisdiction is consistent with federal due process. *Bird*, 289 F. 3d at 871-72 ("*Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir.1998) (addressing the due process concerns rather than inquiring into the propriety of jurisdiction under Ohio's long-arm statute)."). As explained below, Plaintiff cannot establish that exercising jurisdiction over Charter would comport with federal due process. Even if Plaintiff could make such a showing, however, jurisdiction would still be inappropriate as Plaintiff cannot establish that Charter had any Ohio contact, let alone that such conduct proximately caused the alleged TCPA violation. *Spurlark v. Dimension Serv. Corp.*, at *4 (S.D. Ohio July 7, 2022) (identifying factors for Ohio's long-arm statute); *Lucas v. DeSilva Auto. Servs.*, 2018 WL 2020744, at *11 (S.D. Ohio May 1, 2018) (holding Ohio's long arm statute did not support exercising jurisdiction over defendant based on calls by an "unknown telemarketer"). Accordingly, personal jurisdiction is not appropriate under Ohio's long-arm statute.

by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). Under Supreme Court and Sixth Circuit precedent, discussed below, the Court should dismiss Plaintiffs' TCPA claim for lack of personal jurisdiction.

> **B.  Charter is Not Subject to General Jurisdiction Because it is Not "at Home" in Ohio.**

Charter is not subject to general jurisdiction in Ohio. General jurisdiction over a corporation requires a sufficiently substantial corporate presence, typically found at the defendant's place of incorporation and its principal place of business. *Daimler*, 134 S. Ct. at 760. For general jurisdiction to exist elsewhere, the court must find that the corporation's activities in a state are more than "substantial, continuous, and systematic"—that they are so substantial that the corporation "is fairly regarded as at home" there. *Goodyear*, 564 U.S. at 924.

Charter is a Delaware corporation, with its principal places of business in Stamford, Connecticut, Flores Decl. ¶¶ 5-6, meaning Plaintiffs must show it is "fairly regarded as at home" in Ohio to show that general jurisdiction is proper. *Goodyear*, 564 U.S. at 924. Plaintiffs cannot satisfy this heavy burden. Although Charter is registered to do business in Ohio, it has no employees, real property, or corporate offices in Ohio, as explained above. Flores Decl. ¶¶ 6-11. These facts preclude general jurisdiction.[4]  *See*, *e.g.*, *Daimler*, 124 S. Ct. at 761; *Goodyear*, 564 U.S. at 924.

---

[4] Nor can the business operations of the non-party Charter Entities be imputed to Charter in determining whether Charter is "at home" in Ohio. Absent proof that such entities are alter egos of Charter, a subsidiary or affiliate's conduct is irrelevant to personal jurisdiction. *Est. of Thomson ex rel. Est. of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 362 (6th Cir. 2008). And even if the operations of the Charter Entities could be imputed to Charter (they cannot), Plaintiff still could not demonstrate that Charter is "at home" in Ohio under *Goodyear* and *Daimler* because, as discussed above, the Charter Entities' Ohio conduct amounts to only a tiny fraction of their nationwide business. *See* Flores Decl. ¶¶ 8-10; *BNSF Ry. Co. v. Tyrell*, 137 S. Ct. 1549, 1559 (2017) (operation of "over 2,000 miles of railroad track and more than 2,000 employees" in the forum state did not subject defendant to general jurisdiction as).

### C. This Court Lacks Specific Jurisdiction over Charter Because Charter Has No Contacts with Ohio Specific to Plaintiff's TCPA Claims.

Plaintiff has failed to—and, based on the attached jurisdictional evidence, cannot—demonstrate that this Court has specific jurisdiction over Charter. For a court to exercise specific jurisdiction, a plaintiff must plead and prove the defendant: (1) purposefully directed activities at or consummated some transaction with the forum, or performed some act by which it purposefully availed itself to the privilege of conducting activities in the forum, thereby invoking the benefits and protections of the forum's laws; (2) the plaintiff's claim is one which arises out of the defendant's forum-related activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice (*i.e.*, it is reasonable). *Youn v. Track, Inc.,* 324 F.3d 409, 418 (6th Cir. 2003).

The defendant's contacts with the forum state must be what "give rise to the liabilities sued on" and those contacts must be "continuous and systematic." *Daimler*, 134 S. Ct. at 761. Due process also requires that a defendant be sued in a forum state "based on his own affiliation with the State, not based on the random, fortuitous, or attenuated contacts he makes by interacting with other persons affiliated with the State." *Walden v. Fiore*, 571 U.S. 277, 286 (2014) (emphasis added). Thus, the contacts relevant to specific jurisdiction are those contacts with the forum state that are both ***related to the lawsuit*** and ***created by Charter***. *Walden*, 571 U.S. at 285-86 (emphasis added). As explained below, Plaintiff does not adequately allege, and cannot establish, that Charter directed *any* conduct to him in Ohio, much less conduct sufficient to vest this Court with personal jurisdiction over Charter.

#### 1. *Plaintiff Fails to Allege a Prima Facie Case of Specific Jurisdiction.*

Plaintiff fails to allege facts stating a *prima facie* case that this Court may exercise personal jurisdiction over Charter. The Complaint should be dismissed in its entirety for this reason alone.

Under the TCPA, the only claim in the Complaint, Plaintiff must establish that Charter placed the calls itself, or that it is vicariously liable for the entity that placed those calls.

7

*Johansen v. HomeAdvisor, Inc.*, 218 F. Supp. 3d 577, 584 (S.D. Ohio 2016) (party may be directly liable for TCPA violation if it made the call or vicariously liable under traditional agency principles). The same level of allegations sufficient to plead liability under an agency theory are required to plead personal jurisdiction on that basis. *Id.* at 584-85.

Here, the Complaint must be dismissed for lack of personal jurisdiction because it is devoid of any factual allegations from which the Court could infer that Charter made the calls in question. Rather, Plaintiff vaguely alleges "Defendant" made the calls, without specifying whether he is referring to Charter or one of "JOHN DOES 1-10" that Plaintiff alleges Charter hired to market its cable and internet products. Compl. ¶¶ 15, 25-41. This is an impermissible "catch-all" formulation that fails to satisfy the basic tenets of notice pleading, let alone establish jurisdiction over Charter. *Cunningham v. Loc. Lighthouse Corp.*, 2017 WL 4053759, at *3 (M.D. Tenn. Aug. 7, 2017) (conclusory allegations that failed to identify defendant's personal involvement were insufficient to establish jurisdiction on a direct liability theory). Charter has no way to divine whether Plaintiff claims that Charter or one of the ten John Doe defendants made the calls in question. Far more is required to allege personal jurisdiction under theory of direct liability. *See Winters v. Grand Caribbean Cruises, Inc.*, 2021 WL 511217, at *4 (D. Ariz. Feb. 11, 2021) (*Winters I*) (ambiguous allegations regarding party that made the purported calls insufficient to establish personal jurisdiction); *see also Ramsbottom v. Ashton*, 2022 WL 106733, at **16-17 (M.D. Tenn. Jan. 11, 2022) (rejecting conclusory allegations of defendant's direct involvement for personal jurisdiction purposes).

As Plaintiff fails to allege direct liability, Plaintiff needed to allege facts to show that the entity that allegedly called Plaintiff is subject to the Court's jurisdiction and that the caller's conduct may be imputed to Charter under an agency theory. *Johansen*, 218 F. Supp. 3d at 584. But Plaintiff entirely failed to do that either. In fact, the only factual allegation that is relevant to vicarious liability is that Charter allegedly "engages [JOHN DOES 1-10] to place outbound

marketing calls to consumers[.]"[5] Compl. ¶ 10. As other courts have held, merely identifying a contractual relationship is in no way sufficient to allege any agency theory supporting vicarious liability. *Reo v. Caribbean Cruise Line, Inc.*, 2016 WL 1109042, at *5 (N.D. Ohio Mar. 18, 2016) (holding plaintiff failed to allege vicarious liability under the TCPA by merely alleging that defendant "retained the services of third-party marketers[.]"); *Jackson v. Caribbean Cruise Line, Inc.*, 88 F. Supp.3d 129, 139 (E.D. N.Y. 2015) (same). Here, Plaintiff fails to even identify the entities that allegedly made calls, let alone allege facts showing Charter had control over those entities. Thus, Plaintiff fails to plausibly allege an agency relationship between Charter and "JOHN DOES 1-10" to support liability against Charter under traditional agency principles. As such, Plaintiff has failed to allege a prima facie showing of personal jurisdiction.

### 2. *Charter's Evidence Confirms that Plaintiff Cannot Establish Specific Personal Jurisdiction Either Directly or Vicariously*.

In any event, the indisputable evidence establishes that Charter did not place the alleged calls and therefore is not subject to personal jurisdiction on the basis of direct liability. Charter's evidence further confirms that the conduct at issue—the conduct by "JOHN DOES 1-10"—cannot be imputed to Charter for jurisdictional purposes on any vicarious liability theory. Thus, separate from Plaintiff's dispositive pleading failures, Charter's evidence requires dismissal of the Complaint in its entirety for lack of personal jurisdiction.

#### a. **Direct Liability.**

First, Charter is not subject to specific personal jurisdiction on a theory of direct liability because it did not make the subject calls. Thus, on a direct liability theory of personal jurisdiction, Plaintiff's purported injuries in this matter did not arise from any intentional forum-directed activities by Charter because no such activities exist. *See Cunningham*, 2017 WL

---

[5] Plaintiff's allegation that "Defendant's vendors are essential to the success of its telemarketing campaigns," is a legal conclusion that does not factor into the personal jurisdiction analysis. *Neogen Corp.*, 282 F.3d at 887 (personal jurisdiction must be alleged with reasonable particularity); *Cunningham*, 251 F. Supp.3d at 1209 (finding plaintiff's "conclusory, self-serving," allegations were "woefully insufficient to support a finding of specific personal jurisdiction over the Individual Defendants.").

4053759, at *3. The evidence shows that Charter did not call Plaintiff, at either of his phone numbers. *See* Whitney Decl. ¶ 8. And although the Charter Entities, not named in the Complaint, engage in (legal) telephone marketing through one internal group, that group and its vendors did not make any of the calls to the subject numbers (nor did they even receive the subject numbers as a lead, and they only call numbers identified as leads). Whitney Decl. ¶¶ 5-9. In fact, neither Charter nor its affiliates use the phone number allegedly used to place the calls in question. *Id.* ¶ 7. Thus, Charter is not subject to specific personal jurisdiction on a theory of direct liability.

### b. Apparent Authority.

Second, Charter is not subject to personal jurisdiction via a theory of apparent authority, since Charter has no record that it contacted Plaintiff and certainly didn't make statements to him suggesting that any "John Does" had authority to place the calls at issue on Charter's behalf. Whitney Decl. ¶¶ 5-9. On the contrary, Charter has warned the public about unrelated third parties, purporting to act on Charter's behalf, and initiated legal proceedings to address similar unauthorized conduct. Charter Press Release; *Charter Commc'n Holding Co. v. Easy Pay Sols.*, 2:22-cv-05901 (D. N.J. Oct. 5, 2022). Thus, Plaintiff cannot establish that statements by Charter led him to reasonably believe that "JOHN DOES 1-10" were acting subject to Charter's control, the touchstone of an apparent authority analysis. *Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 373-74 (6th Cir. 2015) ("[T]he apparent power of an agent is to be determined by the act *of the principal and not by the acts of the agent*[.]" (quotation omitted) (emphasis in original)); *id.* at 374 ("[N]othing in the record before this court reasonably can be construed to indicate that the defendants held out to third parties, or to anyone else, that CornerBlue was authorized to send text messages to individuals who had not agreed to receive them."). As such, the evidence shows that Charter did not hold out that "JOHN DOES 1-10" as authorized to do anything on Charter's behalf, let alone violate the TCPA. Charter therefore is not subject to personal jurisdiction on an apparent authority theory.

### c. Actual Authority.

Third, Charter's evidence also confirms that it is not subject to jurisdiction under a theory of actual authority, since Charter did not give any agent actual authority to place outbound telemarketing calls on its behalf in violation of the law. Whitney Decl. ¶¶ 5-7. Specifically, the Charter Entities' Telesales vendors are the only third parties authorized make outbound telemarketing calls on Charter's behalf. *Id.* ¶ 5. Those vendors are only authorized to make outbound telemarketing calls to numbers that Telesales identifies in its lead list. *Id.* ¶ 6. To ensure compliance with that mandate, Charter only compensates its Telesales vendors for outbound telemarketing calls that are identified on the lead list. *Id.* At no time did Charter identify either of Plaintiff's numbers on a lead list to its Telesales vendors, so no Telesales vendor, nor anyone acting on Charter's behalf, was authorized to make any of the calls in question. *Id.* ¶¶ 6, 9. Accordingly, even if any "JOHN DOES 1-10" was a Telesales vendor, that entity would have been acting outside the scope of its authority and its conduct cannot be imputed to Charter.

Further, Plaintiff fails to even identify the entity that made the calls, let alone that Charter had a principal-agent relationship with that entity. Multiple courts have dismissed claims for similar deficiencies. *See, e.g.*, *Naiman v. TranzVia, LLC*, 2017 WL 5992123, *10-13 (C.D. Cal. Dec. 4, 2017) (granting 12(b)(2) motion to dismiss where the complaint did "not allege any facts showing that TranzVia had any control, or any express or actual authority, over [telemarketing representative] or any associated entity that made the phone calls" and noting that a "plaintiff must allege facts, not conclusions, and the court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory allegations cast in the form of factual allegations"); *Reo*, 2016 WL 1109042, at *4 (dismissing where "sparse allegations made d[id] not allege any facts that show [defendant] had any power to give interim instructions or otherwise had any control over the performance of callers); *Powers v. One Techs., LLC*, 2021 WL 3519282, at *5 (W.D.N.C. Aug. 10, 2021) ("[W]hile an agency relationship could subject

11

the principal to jurisdiction, an actual agent **must be specified and identifiable by the court to conduct the analysis**." (emphasis added)).

At most, Plaintiff makes vague allegations that Charter "engag[ed]" "JOHN DOES 1-10" and a hearsay allegation that an unidentified prerecorded "John Doe[]" told Plaintiff it was offering Charter's services. Compl. ¶ 27. Initially, the hearsay statement of an unidentified caller, claiming to offer Charter services, cannot establish that the caller was working on Charter's behalf. *Lindenbaum v. Realgy, LLC*, 2022 WL 2047799, at *4 (N.D. Ohio June 7, 2022). Additionally, "[i]t is not enough that each representative identified him or herself as acting on behalf of [the alleged principal, as] . . . [s]uch allegations say nothing about whether defendant consented to those representations . . . [a]nd, more importantly, such allegations indicate nothing about the amount of control, if any, defendant purportedly exercised over the representatives." *Abante Rooter & Plumbing v. Farmers Grp., Inc.*, 2018 WL 288055, at *5 (N.D. Cal. Jan. 4, 2018); *Rogers*, 2020 WL 3869191 at *5 (finding allegations that company sent text messages on behalf of another failed to plausibly allege agency, as opposed to contractual relationship). As there is no evidence, or even an allegation, of such control, Whitney Decl. ¶¶ 5-9, Plaintiff cannot establish personal jurisdiction through actual authority.

### d.  Ratification.

Finally, Plaintiff cannot establish personal jurisdiction via ratification. Initially, for ratification to exist, Plaintiff would need to allege an agency relationship between Charter and "JOHN DOES 1-10[.]" *Home Advisor*, 218 F. Supp. 3d at 586 ("[T]he principal-agent relationship is still a requisite [to ratification], and ratification can have no meaning without it."); *Murray v. Choice Energy, LLC*, No. 1:15-CV-60, 2015 WL 4204398, at *6 (S.D. Ohio July 10, 2015) (dismissing a TCPA claim because plaintiff failed to allege facts about the relationship between defendant and caller that would support finding agency). Again, Plaintiff has failed to identify any facts that would support a finding that Charter had any authority to control "JOHN DOES 1-10." Nor is there any allegation, let alone evidence, that Charter somehow knew about the unidentified "JOHN DOES 1-10[']s]" outbound telemarketing calls or that Charter accepted

any benefit related to those calls, and the evidence shows that Charter does not know who made the calls other than that it wasn't anyone authorized by Charter. Whitney Decl. ¶¶ 5-9.

In fact, Plaintiff's own allegations preclude ratification, as Plaintiff admits he did not purchase Charter's services. Compl. ¶ 22. Thus, Defendant received no benefit from the alleged calls, a prerequisite to ratification. *Warner v. Cent. Tr. Co.*, 865 F.2d 262 (6th Cir. 1988) (holding that the essential elements of ratification include "acceptance by the principal of the benefits of the agent's acts[.]"); *see also Tuso v. Nat'l Health Agents*, No. 2:20-cv-02130-JAM0CKD, 2021 WL 2534220, at *4 (E.D. Cal. June 21, 2021) (dismissing TCPA claim on vicarious liability grounds, in part, because plaintiff failed to establish defendants received a financial benefit sufficient for ratification).

In light of Plaintiff's allegations and Charter's evidence, Plaintiff simply has not and cannot set forth any facts in support of a ratification theory of jurisdiction. Accordingly, Plaintiff cannot establish personal jurisdiction on that basis either, and the Complaint must be dismissed.

## IV. CONCLUSION

If Plaintiff's allegations were sufficient to confer personal jurisdiction over Charter, Charter would be subject to personal jurisdiction in any forum whenever someone called claiming to advertise Charter's services, regardless of whether that party was actually affiliated with Charter. That is not the law. For the reasons explained above, the Court should dismiss the Complaint in its entirety for lack of personal jurisdiction.

DATED: October 18, 2022

                                                 **KABAT CHAPMAN & OZMER LLP**

                                                 */s/ Ryan D. Watstein*
                                                 Joseph Scott Carr (Ohio Bar No. 0098247)
                                                 scarr@kcozlaw.com
                                                 Ryan D. Watstein (*pro hac vice*)
                                                 GA Bar No. 266019
                                                 rwatstein@kcozlaw.com

Patrick J. Fitzgerald (*pro hac vice* forthcoming)
GA Bar No. 405638
pfitzgerald@kcozlaw.com
171 17th Street NW, Suite 1550
Atlanta, Georgia 30363
(404) 400-7300

*Counsel for Defendant Charter Communications, Inc., d/b/a Spectrum*

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 18, 2022, I filed the foregoing document using the Court's CM/ECF system, which will send a notice of electronic filing to all parties of record.

By: */s/ Ryan D. Watstein*
Ryan D. Watstein (*pro hac vice)*